**UNITED STATES of America**

v.

**Reuben CARDONA, Eduardo Cardona and Bernabe Rascon-Duran.**

**No. EP–81–CR–146.**

United States District Court,
W. D. Texas,
El Paso Division.

Sept. 8, 1981.

Rebecca Westfall, Asst. U. S. Atty., El Paso, Tex., for plaintiff.

Richard Mesa, El Paso, Tex., for Reuben Cardona.

Michael Villalba, El Paso, Tex., for Eduardo Cardona.

Roberto Ramos, El Paso, Tex., for Bernabe Rascon-Duran.

## ORDER REGARDING MOTIONS TO SUPPRESS EVIDENCE

HUDSPETH, District Judge.

Defendants Reuben Cardona, Eduardo Cardona, and Bernabe Rascon-Duran are charged with transporting illegal aliens, inducing them to enter the country illegally, and conspiracy, in violation of 8 U.S.C. §§ 1324(a)(2) and 1324(a)(4) and 18 U.S.C. § 371. Each has moved to suppress evidence obtained as a result of a roving patrol stop of their vehicle by officers of the Border Patrol.

The Border Patrol maintains a permanent checkpoint on U.S. Highway 70, roughly opposite the entrance to the White Sands National Monument. Highway 70 runs roughly northeast from Las Cruces, New Mexico on the west to Alamogordo, New Mexico on the east. About midnight on June 30, 1981, a white over blue Oldsmobile Cutlass with Colorado license plates pulling a U–Haul trailer was stopped at the checkpoint. The only occupants were Reuben Cardona, the driver, and his brother Eduardo Cardona. Each identified himself as a United States citizen. In response to questions by Border Patrolman Shelley, Reuben Cardona stated he was moving his cousin to Colorado, and that the trailer was empty. Shelley verified that nothing was in the trailer, and waved the two Defendants on.

A few minutes later, Agents Bentley and Kubas, who were on their way from Alamogordo to relieve the watch at the checkpoint, spotted the car and trailer stopped by the roadside about five miles east of the checkpoint. They radioed this information to the checkpoint, and Agent Daniels left the checkpoint in a Border Patrol van with the intention of taking up a position east of the vehicle's location to observe any movement it made. As he passed the car and trailer, it was still parked on the shoulder of the road, and the occupants could not be seen. Daniels took up a station by the side of Highway 70 a few miles to the east, to await developments.

About 45 minutes passed, and Daniels did not see the vehicle pass his position. He was then notified by radio by a passing Border Patrolman that the car and trailer had disappeared. Knowing that it had not passed him going east, and that no side roads were open on that stretch of Highway 70, Daniels concluded that the Oldsmobile and trailer had turned around and headed back toward Las Cruces. He gave chase, and Border Patrolman Bentley also left the checkpoint to pursue the vehicle. Since they did not know how much head start the Oldsmobile might have, they radioed ahead to ask any available Las Cruces Border Patrol unit to intercept the vehicle.

Border Patrolman Bunting from Las Cruces received the radio message about 1:00 a. m. The message was that Alamogordo agents were looking for a vehicle, and were chasing it west toward Las Cruces. It was described as a white over blue General Motors car, bearing Colorado plates with a specific license number, towing a U–Haul trailer. Bunting was not told why the Alamogordo units wanted the vehicle stopped, but assumed it was suspected of containing illegal aliens. He was told nothing about the occupants of the car, or whether the trailer was full or empty.

Bunting spotted the Defendants' vehicle about four or five miles northeast of Las Cruces, headed west. He made a U-turn and caught up with it. The license number of the Oldsmobile matched the description. He could tell the trailer "had weight in it," but couldn't tell what or how much. Based solely upon the radio instructions, he stopped the car. Reuben Cardona was still driving, and Eduardo Cardona was in the front seat. Two back seat occupants spoke no English and had no papers; they were determined to be illegal aliens. One of the two in the back seat was the Defendant Bernabe Rascon-Duran. The trailer was opened, and thirteen more illegal aliens were discovered.

Later investigation by the Border Patrol established that the Oldsmobile belonged to a girl friend of Reuben Cardona, and that she had loaned it to him. A license plate check verified that the owner was the person identified by Reuben Cardona.

■ The evidence at the hearing on the motions to suppress evidence failed to show that either Eduardo Cardona or Bernabe Rascon-Duran had any standing to contest the stop of the Oldsmobile. They were simply passengers. Neither has established any proprietary or possessory interest in the vehicle that would allow him to challenge the stop and search. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Vasquez-Vasquez*, 609 F.2d 234 (5th Cir. 1980); *United States v. Reyes*, 595 F.2d 275 (5th Cir. 1979). These Defendants' motions to suppress must be denied. However, the Government conceded at the hearing that Defendant Reuben Cardona had standing, so as to him, the merits of the stop must be considered.

■ A roving patrol, such as this one, may stop travelers for the limited purpose of asking questions about their citizenship only if the agent is aware of specific articulable facts, together with reasonable inferences from those facts, which reasonably warrant suspicion that the vehicle contains illegal aliens. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). Having reason to believe that the suspect vehicle has come from the border is a vital element of the *Brignoni-Ponce* test. *United States v. Lamas*, 608 F.2d 547, 549 (5th Cir. 1979). In the instant case, there was no reason to believe Defendant's car had come from the border. Although the Government offered no evidence with respect to distances, the Court will take judicial notice that the checkpoint on Highway 70 is at least 70 miles from the international boundary at El Paso, Texas. The point of the stop was four to five miles northeast of Las Cruces, and Las Cruces is at least 40 miles from El Paso. Nothing about the car, the trailer, or the Defendants indicated any nexus with the border.

■ Had the car and trailer waited by the roadside past the checkpoint and then proceeded toward Alamogordo, the Border Patrol agents would have had reasonable grounds to believe that a "walkaround"[1] had taken place to circumvent the checkpoint. No such reasonable belief could be based upon the action of the vehicle in heading back toward Las Cruces. The latter city is within a perimeter of permanent checkpoints maintained by the Border Patrol on every major highway leading out of the area.[2] The vehicle's behavior on the night of June 30 was curious, even suspicious, but that is not enough. The cases require reasonable suspicion that the vehicle contains *illegal aliens*. The facts as a whole do not support a reasonable belief that this "Wrongway Corrigan" car and trailer, headed back toward Las Cruces, was

---

1. Among alien smugglers, a common tactic to avoid detection at a checkpoint is to let the aliens out before reaching the checkpoint, let them walk through the desert around it, and rendezvous with the smuggler's vehicle farther down the highway.

2. Permanent checkpoints are maintained on Interstate 10 west between Las Cruces and Deming, New Mexico; on Interstate 25 near Truth or Consequences, N. M.; on Highway 54 between El Paso and Alamogordo; on Highway 62/180 between El Paso and Carlsbad, N.M.; and on Interstate 10 east near Sierra Blanca, Texas.

then transporting aliens illegally in the country.

After viewing the whole picture, see *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), the Court concludes that the agents lacked a reasonable basis for believing that the car and trailer contained illegal aliens. Good guesswork, even if later proven correct, is not a sufficient basis for a roving patrol stop. The motion to suppress evidence of Reuben Cardona, the only Defendant with standing, should be granted.

It is therefore ORDERED that the motions of Defendants Eduardo Cardona and Bernabe Rascon-Duran to suppress evidence be, and they are hereby, DENIED.

It is further ORDERED that the motion of Defendant Reuben Cardona to suppress evidence be, and it is hereby, GRANTED, and all fruits, direct and indirect, of the stop, search and seizure of the Oldsmobile and U-Haul trailer on June 30, 1981, are suppressed as evidence in this cause.