UNITED STATES of America, Appellee,

v.

Andrew Jackson FINCH, Jr., Appellant.

No. 81–5060.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1981.

Decided April 20, 1982.

J. Flowers Mark, William B. Moffitt, Alexandria, Va. (Nina J. Ginsberg, Mark & Moffitt, P. C., Alexandria, Va., on brief), for appellant.

Lionel S. Lofton, Asst. U. S. Atty., Charleston, S. C. (Henry Dargan McMaster, U. S. Atty., Columbia, S. C., on brief), for appellee.

Before HALL, SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Andrew Jackson Finch, Jr., appeals from his conviction of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Finch maintains that federal Customs officers lacked authority to conduct the investigation which led to his

arrest, that a visual search of his camper and the opening of a wrapped package found inside the camper were unlawful, and that the district court judge abused his discretion in the imposition of sentence. Finding no merit in these contentions, we affirm.

Viewed in the light most favorable to the appellee, the government, the evidence is that Customs patrol officers in the Charleston, South Carolina, area received from Washington, D. C., Customs officers information regarding a suspected marijuana smuggling venture. The Charleston officers were provided with descriptions of three Virginia vehicles believed to be involved in the smuggling operation; two vehicles meeting these general descriptions were spotted in the parking lot of a Charleston area motel in the early evening of June 17, 1980. The vehicles, a 1976 red Chevrolet pickup with a black camper shell, and a brown Ford pickup with a light-colored camper shell, were photographed by Customs officers. The trucks were kept under surveillance, and two white males who entered room 273 of the motel were observed to "show an interest" in the vehicles. The Customs officers briefly lost track of the vehicles, but the red Chevrolet pickup returned to the motel early on the morning of June 18. Customs Patrol Officer McDonald approached this truck, shined his flashlight through an opening in the camper curtain and observed opaquely wrapped bales, which he believed to contain marijuana.

At approximately 2:50 a. m., the appellant exited room 273, got into the red truck and departed the area, heading west. Agent McDonald followed the truck while other Customs officers and Drug Enforcement Administration (DEA) agents were summoned to assist. An attempt to stop the vehicle was made when it reached Interstate 26, but the truck began evasive maneuvers and a high-speed chase ensued. The truck crossed the median and proceeded west in the eastbound lanes for a brief distance. It then struck a Customs vehicle, stopped, and the appellant ran into the woods adjoining the highway, where he was immediately apprehended. A Customs officer present at the scene testified that marijuana residue was visible on the truck bumper.

The truck and appellant Finch were taken to the Charleston Customs House at the direction of DEA Agent Stein, who testified that he examined the truck externally and observed through the camper curtain what appeared to be marijuana residue and bales of marijuana. Later on the morning of June 18, Agent Stein obtained a search warrant from a United States magistrate. The affidavit furnished the magistrate by Stein stated in part:

The 1976 red Chevrolet pick up truck was towed to the U. S. Customs House, Charleston, SC, where it was examined by S/A Harold R. Stein, Drug Enforcement Administration, Charleston, SC. Agent Stein observed plastic bales secured with masking tape inside the camper. Particles of marihuana residue and seeds could also be observed on the plastic bales. The odor of marihuana was noticed all around the camper especially from the open window. Marihuana residue and seeds were observed on the rear bumper. Agent Stein has extensive experience dealing with bulk marihuana seizures and is familiar with the odor, residue and seeds associated with marihuana.

After the search warrant was executed, 40 opaque plastic-wrapped parcels weighing approximately 1300 pounds were found in the camper; a DEA agent cut into one of the parcels and performed a field test which indicated that the material in the parcels was marijuana.

Finch first contends that the Customs officers had no authority to conduct the surveillance and law enforcement procedures which resulted in his arrest and the seizure of the marijuana, and that all evidence resulting from that activity should have been suppressed.

He argues that Reorganization Plan No. 2 of 1973 [1] has transferred to the Attorney General all intelligence, investigative and law enforcement activities related to the suppression of illegal drugs and that Customs' authority to participate in such activities is limited to regular inspection locations at ports of entry or their functional equivalent. We cannot agree. The purpose of the Plan was to better coordinate drug enforcement activity by centralizing control in the DEA, which has primary responsibility for gathering intelligence on drug smuggling and trafficking; Customs, however, retains a supportive role. In the case *sub judice*, the DEA was notified when Charleston Customs agents learned of a possible smuggling operation and again notified when the trucks were discovered in the motel parking lot. After the stop of the truck, the DEA assumed responsibility, took custody of Finch and the truck and secured a search warrant. Thus there is no evidence that the Customs agents, stationed and acting in a coastal area, usurped the functions of the DEA or otherwise acted beyond their authority.

■ Finch next contends that his fourth amendment rights were violated when Agent McDonald visually examined the interior of the camper through the window while the vehicle was parked at the motel, and when the sealed, opaquely wrapped packages were opened at the Customs House. The evidence, viewed in the light most favorable to the government, discloses that the window curtains were partially open when Agent McDonald shined a flashlight inside the camper. The Customs agent was in a parking lot where, along with any other member of the public, he lawfully could look into the camper and see the bales. The exposure of the bales to the plain view of the public negates any argument that Finch maintained a significant expectation of privacy in the contents of the camper. *See, Smith v. Slayton*, 484 F.2d 1188 (4th Cir. 1973), *cert. denied*, 415 U.S. 924, 94 S.Ct. 1429, 39 L.Ed.2d 481 (1974).

■ Finch does not challenge the validity of the search warrant; rather, he contends that a separate warrant was necessary for the wrapped bales. His attempts to elude capture, coupled with the presence of marijuana residue on the camper bumper and interior, were more than sufficient justification for the issuance of the original search warrant, which described both the specific property being sought—the marijuana, and the vehicle in which it was concealed. The warrant thus meets the requirements of the fourth amendment, which requires only that it "particularly describe the place to be searched and the person or things to be seized."

As the Tenth Circuit has recognized, in these circumstances "[w]e believe that the Fourth Amendment does not require the second or additional warrant. Any other result is inconsistent with practicality. Many containers can be placed one within the other." *United States v. Kralik*, 611 F.2d 343 (10th Cir. 1979), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1603, 63 L.Ed.2d 788 (1980). Finch's reliance on *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), as requiring a second search warrant for the packages is misplaced. *Robbins* merely addresses the issue of whether closed containers found during a lawful warrantless automobile search may be opened. It in no way suggests that more than one warrant is necessary in circumstances such as these.

■ Finch's final argument—that the district judge abused his discretion in the imposition of sentence—is totally without merit. Absent exceptional circumstances, this court is without authority to act unless the sentence exceeds the statutory maximum. *United States v. Pruitt*, 341 F.2d 700 (4th Cir. 1975).

The judgment of the district court is, therefore, affirmed.

AFFIRMED.

---

1. 38 Fed.Reg. 15,932, 87 Stat. 1091 (1973), as amended, Pub.L.93–253, § 1, 88 Stat. 50 (1974), reprinted at 28 U.S.C. §§ 509–512.