## Richmond

FAITH ANGELA JOSEPHS

v.

COMMONWEALTH OF VIRGINIA

No. 0423-87-2

Decided March 27, 1990

COUNSEL

Michael Morchower (Sharon E. Gregory; Morchower, Luxton and Whaley, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## ON HEARING EN BANC

OPINION

**COLE, J.**—This case was heard *en banc* pursuant to Code § 17-116.02(D). The appellant, Faith Angela Josephs, contends that her conviction for distribution of marijuana in violation of Code

§ 18.2-248.1 should be overturned because (1) ·the state police improperly stopped the vehicle in which she was a passenger, and (2) the evidence was insufficient to establish that she knowingly and intentionally possessed marijuana. For the reasons that follow, we affirm the conviction.

Josephs was indicted on two charges: (1) grand larceny of the vehicle, the property of General Rent-A-Car; and (2) possession with intent to distribute more than five pounds of marijuana. She moved to suppress all of the evidence secured by virtue of the illegal stop. After denial of her motion to suppress, the trial court found her guilty of both charges. No appeal was· taken from the larceny conviction. This appeal results from the conviction of possession of marijuana with intent to distribute.

Trooper C. S. Asbury was the only witness who testified at the suppression hearing. On August 20, 1986, Asbury, a twenty-one year veteran of the Virginia State Police, was stationed on Interstate 95 in Hanover County. At the time of the events in question, he was in uniform, displaying his badge of office, but driving an unmarked police car. According to his testimony, his attention was drawn to a 1986 blue Cavalier Chevrolet proceeding north, five miles below the speed limit. It bore a Florida license plate indicating it was a rental vehicle from Dade County, Florida. Asbury saw only one person in the car, a black male. Asbury could see no luggage in the vehicle. At least twice, the trooper pulled along side of the vehicle and looked at the driver for ten to fifteen seconds. The driver never looked at the trooper, but kept looking straight ahead. When Asbury dropped back behind the Chevrolet, the driver repeatedly glanced in the rearview mirror at him. This action and reaction continued for approximately seven miles, during which time Asbury decided that he had reasonable suspicion to stop the vehicle for further investigation. He called for the assistance from a marked police car. Despite the fact that the troopers had red and blue flashing lights on their vehicles, the driver was slow to stop. He travelled about half a mile before pulling into the right emergency lane on the shoulder of the highway. Asbury did not see the defendant and her five year old daughter, who were lying down in the back seat. After stopping the vehicle, the trooper found that the car was rented in the name of a third party who was not in it. The documents further indicated that the vehicle was not to be driven out of Florida. The· trooper verified

this information in Florida and discovered that the occupants were not authorized to have possession of the vehicle. The driver and Josephs were arrested for larceny of the car and informed of their rights.

The officers requested the driver's permission to search the trunk. He refused. A narcotics dog was called to the scene and he promptly alerted on the trunk. Armed with this information, the officers opened the trunk and searched it. When the trunk was opened, Asbury noticed a strong odor of marijuana and discovered four tied opaque garbage bags containing a weed-like substance which proved to be 130 pounds of marijuana. They also found two pieces of luggage. Josephs identified her luggage but maintained that she knew nothing about the drugs, saying that she was merely riding in the car in order to get to New York.

## I. STANDING

The defendant challenges the legality of the initial stop of the vehicle, which she asserts was a violation of her right under the fourth and fourteenth amendments to be free from illegal seizure. The Attorney General contends that, since the defendant was a thief in a stolen car, she has no standing to complain of the stop and search of the car.

As early as 1907 the Supreme Court held that remedies for violations of constitutional rights would only be afforded to a person who "belongs to the class for whose sake the constitutional protection is given." *Hatch v. Reardon*, 204 U.S. 152, 160 (1907). "[I]t is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he . . . establish that he himself was the victim of an invasion of privacy." *Jones v. United States*, 362 U.S. 257, 261 (1960). Subsequent attempts to vicariously assert violations of the fourth amendment rights of others have been rejected repeatedly by the Supreme Court. *See, e.g., Alderman v. United States*, 394 U.S. 165, 174 (1969). We, therefore, address the history of standing since it is essential to an understanding of the principles involved.

In *Jones*, a defendant charged with unlawful possession of contraband desired to contest the search and seizure that led to discovery of the contraband. The law of standing then in effect re-

quired that he establish his possession of the contraband. This evidence of possession, however, could later be used against him at trial. The Supreme Court attempted to resolve this dilemma through two alternative holdings. First, it established a rule of "automatic" standing to contest an allegedly illegal search where the proof of possession needed to establish standing was also an essential element of the offense charged. 362 U.S. at 264. Second, it held that anyone legitimately on the premises where a search occurred could challenge its legality. *Id.* at 267. We are not concerned with "automatic" standing since this principle was overruled in *United States v. Salvucci*, 448 U.S. 83, 95 (1980); *see also McCoy v. Commonwealth*, 2 Va. App. 309, 311, 343 S.E.2d 383, 385 (1986). Our interest lies in the second alternative — the legitimacy of presence at the location of a search. The *Jones* Court concluded:

> No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.

362 U.S. at 267. The Court modified this holding by adding: "*This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched.*" *Id.* (emphasis added).

One authoritative writer, in commenting upon this proscription, stated that "[t]his limitation also has its counterpart in the vehicle search cases decided both before and after *Rakas*: most courts agree that an occupant of a vehicle cannot be said to have standing by virtue of his presence if he is in possession of a stolen or otherwise illegally possessed or controlled vehicle." 4 W. LaFave, *Search and Seizure* § 11.3(e) (2d ed. 1987). In *Rakas v. Illinois*, 439 U.S. 128 (1978) the Supreme Court stated that, despite the "clear statement" in *Jones*, "several lower courts inexplicably have held that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile." *Rakas* at 141 n.9. This language clearly suggests that the lawfulness of the defendant's interest in the place searched is critically important.

The standard of "legitimately on premises" announced in *Jones* was reexamined in *Rakas*, where the petitioners urged the Court to broaden the rule of standing so that "any criminal defendant at whom a search was 'directed' would have standing to contest the legality of that search and object to the admission at trial of evidence obtained as a result of the search." *Id.* at 132. The Court rejected this approach and in the process announced a new focus for the inquiry in cases such as this. The Court observed that labeling the question in *Jones* as one of "standing" did not aid in the determination of the motion to suppress. *Id.* at 133. The question would be more appropriately characterized by "simply recognizing it as one involving the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." *Id.*

The Court then departed from the *Jones* standard of "legitimately on premises," which it felt was too broad, and reaffirmed the criterion first established in *Katz v. United States*, 389 U.S. 347 (1967) — whether the person claiming the protection of the fourth amendment "has a legitimate expectation of privacy in the invaded place." 439 U.S. at 143. In a lengthy footnote, the Court explained "legitimate expectation of privacy:"

Obviously, however, a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate." His presence, in the words of *Jones*, 362 U.S. at 267, is "wrongful"; his expectation is not "one that society is prepared to recognize as 'reasonable.' " *Katz v. United States*, 389 U.S. at 361 (Harlan, J., concurring). And it would, of course, be merely tautological to fall back on the notion that those expectations of privacy which are legitimate depend primarily on cases deciding exclusionary-rule issues in criminal cases. Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights at-

taching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in *Jones, supra,* and *Katz, supra.* But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment.

*Id.* at 143-44 n.12.

*Rakas* involved a challenge to the search of a vehicle which had been legally stopped by police. But the language of the opinion demonstrates that the Court did not intend to limit its holding to those facts, as the minority suggests. Rather, the Court used *Rakas* to address the broader issue of standing to invoke any fourth amendment rights. A stop is a seizure within the meaning of the fourth amendment, so the principles of *Rakas* must be applied to the case before us.

■ This is not the first occasion that this court has addressed the question of standing to allege a violation of fourth amendment rights. In *McCoy,* we said that the appellant had "the burden of proving that he has standing to assert the constitutional right." 2 Va. App. at 311, 343 S.E.2d at 384. We further said that "[t]he test is whether the appellant objectively had a reasonable expectation of privacy at the time and place of the disputed search. In making the analysis the court looks to the totality-of-the-circumstances." *Id.* at 311, 343 S.E.2d at 385 (citations omitted).

■ In examining what circumstances may be considered, the court in *United States v. Haydel,* 649 F.2d 1152 (5th Cir. 1981), *cert. denied,* 455 U.S. 1022 (1982) said:

[F]actors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it

would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.

*Id.* at 1155. *See also United States v. Shepherd*, 714 F.2d 316 (4th Cir. 1983), *cert. denied*, 466 U.S. 938 (1984); *United States v. Finch*, 679 F.2d 1083 (4th Cir. 1982).

A number of sister state courts have addressed the question of a thief's right to privacy in a stolen automobile. In *State v. Abordo*, 61 Haw. 117, 596 P.2d 773 (1979), two police officers observed a vehicle which they suspected was stolen. The vehicle was stopped and the driver, Abordo, was arrested for its theft. At trial, Abordo contended that his rights were violated when the officer entered the car to observe the vehicle identification number. The court decided that "his possession of the thing searched was wrongful. Under these circumstances, we fail to discern any constitutionally recognized privacy interest arising in appellant's favor." *Id.* at 123, 596 P.2d at 777. *State v. Schad*, 129 Ariz. 557, 633 P.2d 366 (1981), *cert. denied*, 455 U.S. 983 (1982), involved a search in which police found stolen credit cards in a stolen vehicle. The court stated: "This court has refused to recognize as 'reasonable' any expectation of privacy a thief may have in an automobile which he has stolen." *Id.* at 563, 633 P.2d at 372; *see also Graham v. State*, 47 Md. App. 287, 421 A.2d 1385 (1980); *State v. Purcell*, 586 P.2d 441 (Utah 1978); *State v. Cowen*, 104 Idaho 649, 662 P.2d 230 (1983)(*Rakas* interpreted as barring passenger from questioning stopping of car); *State v. Ribera*, 183 Mont. 1, 597 P.2d 1164 (1979)(passenger has no standing to object to the search of car, though defendant's objection is to illegal stopping and arrest which preceded and led to search); *Meeks v. State*, 692 S.W.2d 504 (Tex. Crim. App. 1985)(passenger lacks standing to object to the search of truck, though search was accomplished by illegal stopping).

The minority opinion maintains that, "[a]fter *Rakas*, other courts, perceiving the difference between a passenger's standing to object to a *search* of a car in which he or she is riding and his or her standing to question the legality of the stop of the automobile, have concluded that a passenger in an automobile has standing to object to an illegal stop of the vehicle, regardless of the passenger's lack of property or possessory interest in the vehicle," citing

*Haworth*,[1] *Eis*,[2] *DeMasi*,[3] *Guzy*,[4] and *Parkhurst*.[5] In *Haworth*, the court decided nothing relevant to the circumstances of this case. The defendant in *Haworth* was the driver of the vehicle stopped. The vehicle was not stolen, but had stolen merchandise in it. Since the case was tried prior to the decision in *United States v. Cortez*, 449 U.S. 411 (1981), the court remanded the case for reconsideration under the *Cortez* standards, including requesting additional findings of fact relevant to whether the defendants had standing to contest the subsequent searches of the vehicle. In *Eis*, the defendant was a passenger in a pickup truck owned and operated by Eis, who was stopped by a sheriff. No stolen vehicle was involved. The court held that occupants of motor vehicles, whether drivers or passengers, ordinarily have a legitimate expectation of privacy which is involved when the vehicle is stopped by the government. This holding presupposes the occupant's rightful presence in the vehicle. Otherwise the privacy expectation is not legitimate. *See Rakas*, 439 U.S. at 143 n.12. In *DeMasi*, two defendants were involved, Lawrence M. Lanoue and Ralph DeMasi. Lanoue was the owner and driver and DeMasi a passenger in the vehicle stopped. No stolen vehicle was involved and the court held that both defendants shared a legitimate expectation that they would be free from government intrusion. 419 A.2d at 294. In *Guzy* and *Parkhurst*, no stolen vehicle was involved. In each case, the defendant had permission of the owner to be in the vehicle as a passenger. Therefore, these cases do not refute the Commonwealth's position that Josephs has no standing to contest the stop of the stolen vehicle.

Federal authority is equally instructive. In *United States v. Hargrove*, 647 F.2d 411 (4th Cir. 1981), the defendant was driving a stolen vehicle when he was stopped by police. After a suppression hearing, the court decided that Hargrove did not have a legitimate expectation of privacy in the car he was driving and thus, lacked standing to object to a search of the vehicle. *Id.* at 413; *see also United States v. Lanford*, 838 F.2d 1351, 1353 (5th Cir. 1988) (Lanford lacked standing to challenge search of stolen

---

[1] *State v. Haworth*, 106 Idaho 405, 679 P.2d 1123 (1984).

[2] *State v. Eis*, 348 N.W.2d 224 (Iowa 1984).

[3] *State v. DeMasi*, 419 A.2d 285 (R.I. 1980), *vacated*, 452 U.S. 934 (1981).

[4] *State v. Guzy*, 139 Wis. 2d 663, 407 N.W.2d 548, *cert. denied*, 484 U.S. 979 (1987).

[5] *Parkhurst v. State*, 628 P.2d 1369, 1374 (Wyo.), *cert. denied*, 454 U.S. 899 (1981).

automobile when legitimate expectation of privacy test applied); *United States v. Erickson*, 732 F.2d 788, 790 (10th Cir. 1984) (no evidence that defendant authorized to possess, use, or fly aircraft; he failed to show lawful possession giving rise to legitimate expectation of privacy); *United States v. Obregon*, 748 F.2d 1371, 1375 (10th Cir. 1984) (Obregon did not have legitimate expectation of privacy in car he was driving, thus no standing to challenge stop and later search); *United States v. Hensel*, 672 F.2d 578, 579 (6th Cir.), *cert. denied*, 457 U.S. 1107 (1982) (defendant lacked standing to challenge search of trunk because he had no legitimate expectation of privacy in stolen vehicle or its contents); *United States v. Roy*, 734 F.2d 108 (2d Cir. 1984) (escaped felon, "no more than trespasser on society," did not have legitimate expectation of privacy in passenger compartment or trunk of his car).

Another authority comments that, without "automatic standing," which was rejected in *United States v. Salvucci*, it is possible that "illegal government seizures of contraband and stolen property will not be subject to challenges by the aggrieved defendant" and "it would logically follow that the right to challenge the seizure of articles does not apply when the articles are wrongfully possessed." 2 W. Ringel, *Searches and Seizures, Arrests and Confessions* § 20.3(b)(2) (2d ed. 1988). "With regard to searches of stolen automobiles, this result would even more clearly follow. Since it is a privacy interest in the place searched that defines the right to challenge a Fourth Amendment violation, a conclusion that no legitimate expectation of privacy exists in stolen property would place the search of a stolen vehicle above challenge." *Id.*

In this case, Josephs had the burden of establishing not only that the evidence she sought to exclude was unlawfully secured, but also that her own fourth amendment rights were violated by the search and seizure she sought to challenge. *See Rakas*, 439 U.S. at 133-41.

What expectation of privacy did Josephs claim in the stolen automobile? She asserts neither a property nor a possessory interest in it. In fact, she could not claim such an interest since the "[t]heft of goods and chattels does not divest one who owns, or has title to, such property from his ownership of the property; the owner may follow and reclaim the stolen goods wherever he or she may find them." 63A Am. Jur. 2d *Property* § 44 (1984). Josephs

denied any interest in the contraband seized from the vehicle, though the trial court found otherwise. In short, Josephs failed to show any expectation of privacy by law in the stolen vehicle, "either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 143-44 n.12. In fact, in argument before this court she admitted that she had no privacy interest in the stolen vehicle.

 To accept the argument of the defendant in this case would mean a revival of the old "automatic" standing rule that was firmly overruled in *Salvucci* in 1980, and would signal a departure from *Rakas*, which held that a person claiming the protection of the fourth amendment must have a reasonable, legitimate expectation of privacy in the invaded place. 439 U.S. at 143. Having only an illegitimate, wrongful, and unreasonable expectation of privacy in the stolen vehicle, Josephs lacks standing to object to the stop of the car. Josephs' expectation of privacy in her own person does not confer automatic standing upon her to contest the stopping of the vehicle in which she was riding when she had no reasonable expectation of privacy in it. The police did not search Josephs' person or make any intrusion upon her person until after the arrest for larceny of the vehicle, and she has made no claim otherwise. A search of her person as an incident to the arrest for grand larceny was proper.

 " 'No valuable social purpose could conceivably be served by extending the protection of the Fourth Amendment to a thief in the enjoyment of the stolen automobile.' " *Graham v. State*, 47 Md. App. 287, 294, 421 A.2d 1385, 1387 (1980)(quoting *Palmer v. State*, 14 Md. App. 159, 169, 286 A.2d 572, 578 (1972)). *Rakas* teaches that use of the exclusionary rule should be approached with caution. "Each time [it] is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected." *Rakas*, 439 U.S. at 137 (citations omitted). We hold that the defendant had no reasonable expectation of privacy in the stolen Chevrolet car and had no standing to assert any violation of fourth amendment rights under the circumstances of this case.

## II. *SUFFICIENCY OF THE EVIDENCE*

 The defendant further asserts that the evidence was insufficient to establish that she knowingly and intentionally possessed the marijuana. She maintains that there was no evidence in the record to link her with the marijuana in the trunk, and no items of contraband were found in her belongings or on her person to suggest that she had knowledge of the marijuana in the trunk. Without some nexus, she argues, it is pure speculation that she had knowledge of the presence of the marijuana. We disagree.

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

 Our analysis is guided by well-established principles. It is unlawful for any person to sell, give, distribute or possess with intent to sell, give or distribute marijuana. Code § 18.2-248.1. To convict a defendant of illegal possession of drugs, the Commonwealth must prove that the defendant was aware of the presence and character of the drugs, and that he intentionally and consciously possessed them. *Andrews v. Commonwealth*, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). "Physical possession giving the defendant 'immediate and exclusive control' is sufficient. However, the possession need not always be exclusive. The defendant may share it with one or more. The duration of the possession is immaterial and need not always be shown to have been actual possession." *Gillis v. Commonwealth*, 215 Va. 298, 301-02, 208 S.E.2d 768, 771 (1974). It is not necessary to show actual possession of the controlled substance. Constructive possession of a controlled substance may be shown by establishing that it was subject to his dominion or control. *Ritter v. Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970). Such "possession may be proved by 'evidence of acts, declarations or conduct of the accused from which an inference may be fairly drawn that he knew of the exis-

tence of narcotics at the place where they were found.' " *Andrews*, 216 Va. at 182, 217 S.E.2d at 814 (citations omitted).

We first address the question whether there was sufficient evidence in the record to establish that Josephs had knowledge of the presence of the marijuana in the trunk. The only direct evidence about Josephs' knowledge came from trooper Asbury. He testified that he advised her of her rights and talked to her about the case. According to his testimony, "she just made a statement that she didn't know about the drugs." He also testified that she stated to him that "she was just riding to New York" and that "she was going to go to New York with this other guy who was driving the car." The officer took notes of the conversation and his notes were introduced as an exhibit. They said: "Said she didn't know about drugs. 1st time I've driven with that stuff." The trial judge was entitled to consider this note and from it he could have concluded that she knew that marijuana was in the trunk, although this was the first time she had driven with it.

■ In determining whether a defendant constructively possessed drugs, the defendant's proximity to the drugs and his occupancy of the vehicle must also be considered. Although mere proximity to the drugs is insufficient to establish possession, and occupancy of the vehicle does not give rise to a presumption of possession, Code § 18.2-250, both are factors which may be considered in determining whether a defendant possessed drugs. *See Lane v. Commonwealth*, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982); *Eckhart v. Commonwealth*, 222 Va. 447, 281 S.E.2d 853 (1981).

Josephs and her five year old daughter had only one piece of luggage between them which contained all of their personal belongings. Their bag was located in the trunk of the car surrounded by three huge bags of marijuana. Trooper Asbury testified that, upon opening the trunk of the car, he smelled a "very strong odor of marijuana." We think that the trial judge could reasonably infer from this evidence that Josephs brought the luggage with her for the purpose of using it on the trip and that she would have used it at some point in time during the 1,000 mile trip from Miami. The open presence of the bags and the strong odor of the marijuana would have been sufficient to put her on notice of its presence in the trunk. Photographs introduced in the evidence demonstrate that the trunk was literally filled with the marijuana,

leaving little room for the luggage.

The trial judge was further entitled to draw reasonable inferences from the ownership and possession of the car. According to the record, General Rent-A-Car owned the vehicle and on August 10, 1986, leased it to John K. Crooks, who was to return the vehicle on August 11, 1986. Crooks' address was shown on the rental agreement as 24 Hibiscus Avenue, Kingston, Jamaica. The agreement further disclosed that Crooks was self-employed at the same Jamaica address, having a local contact at a Miami Holiday Inn. Crooks' rental agreement was extended to August 17, 1986, and then to August 25, 1986. Although we do not know the details of how Josephs and her companion, Courtney Wilkins, got possession of the vehicle, we know that they had possession of it in Hanover County on August 20, 1986. The record establishes that the occupants were wrongfully in possession of the vehicle and were convicted of larceny of it. We find ample evidence in the record of acts, declarations and conduct of the accused from which the trial judge could reasonably have inferred that Josephs knew of the existence of the marijuana in the trunk of the car where it was found.

■ We further find that Josephs was aware of the character of the marijuana. Possession of a controlled drug gives rise to an inference of the defendant's knowledge of its character. *See People v. Nettles*, 23 Ill. 2d 306, 308-09, 178 N.E.2d 361, 363 (1961), *cert. denied*, 369 U.S. 853 (1962).

While it is not necessary that the Commonwealth prove ownership of the controlled drug in the legal sense of title, the prosecution must show that the defendant exercised some quantum of control or dominion over the drug. Josephs and her companion were convicted of stealing the 1986 Chevrolet and were using it for the purpose of transporting the marijuana to New York. The drugs were as close in proximity to Josephs as they were to her companion. We have no direct evidence as to the ownership of the drugs. We hold that the trial judge was warranted in concluding that the drugs were owned and possessed jointly by Josephs and her companion. Josephs' luggage was in the trunk with the drugs and she had the same access to the trunk as did the companion, except that at the time of arrest, the companion was driving and the keys were in the ignition switch. The totality of the circumstances disclosed by the evidence was sufficient to support the trial

court's finding that the defendant exercised sufficient dominion and control over the marijuana to constitute joint constructive possession with her companion.

When the proof of intent to distribute narcotics rests upon circumstantial evidence, the quantity which the defendant possesses may indicate the purpose for which it is possessed. *Monroe v. Commonwealth*, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987). Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it. *Hunter v. Commonwealth*, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973). The evidence clearly established that the three packages in the trunk of the car contained 130 pounds of marijuana. Under these circumstances, we hold that the record contains sufficient evidence to support the conviction of the defendant for possession of marijuana with intent to distribute it.

For the foregoing reasons, we affirm the conviction in the trial court.

*Affirmed.*

Koontz, C.J., Duff, J., Hodges, J. and Moon, J. concur.

Barrow, J., with whom Benton, J. and Coleman, J. join, dissenting.

The majority fails to distinguish between Josephs' standing to challenge a *search* of an automobile in which she was riding and her standing to challenge a *stop* of the same automobile. A passenger in an automobile has no standing to challenge its search where he or she can assert neither a proprietary nor a possessory interest in the automobile. *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978). It, therefore, follows that a passenger in a stolen automobile, in which he or she has no proprietary or possessory interest, has no standing to challenge the legality of a *search* of the automobile. *United States v. Hargrove*, 647 F.2d 411, 413 (4th Cir. 1981); *see also Rakas*, 439 U.S. at 142 n.9. It does not, however, follow that a thief has no standing to challenge the seizure of his or her person while riding as a passenger in a stolen vehicle.

A person has "standing" to assert fourth amendment rights only if he or she is asserting the violation of his or her own rights, not those of someone else. *Jones v. United States*, 362 U.S. 257,

261 (1960). A passenger or a thief who has no proprietary or possessory interest in an automobile in which he is riding and, consequently, has no "legitimate expectation of privacy in the *particular areas of the automobile* searched," therefore, lacks standing to question the legality of the search of the automobile. *Rakas*, 439 U.S. at 148 (emphasis added). Unquestionably, this defendant had no legitimate expectation of privacy in the *trunk* of the automobile she was convicted of stealing. *See id.* at 148-49.

The question in this case, however, is whether Josephs has standing to question the legality of her detention while riding in a car which she later was convicted of having stolen. The detention may prove to be legal, depending upon whether the police reasonably suspected that the car was stolen or some other criminal conduct was underway, but the threshold issue is whether Josephs can question the reasonableness of that suspicion. The answer to this question depends on whether Josephs is asserting violation of her own fourth amendment rights or those of someone else. *Rakas*, 439 U.S. at 143.

An unreasonable seizure of a person violates the fourth amendment. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). The fourth amendment, in addition to limiting the power of the police to search "houses, papers, and effects," protects the "right of the people to be secure in their persons." U.S. Const. amend. IV. The Supreme Court has always recognized "the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry*, 392 U.S. at 9 (quoting *Union Pac. Ry. v. Botsford*, 141 U.S. 250, 251 (1891)). An occupant of a car stopped by the police is entitled to the same fourth amendment protection as is a person stopped on the street. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (decided after *Rakas*). A police stop of an automobile is a seizure of the car's occupants. *Id.* at 653; *Simmons v. Commonwealth*, 238 Va. 200, 202, 380 S.E.2d 656, 658 (1989). This conclusion flows from an occupant's right to be secure in his or her person, *see Prouse*, 440 U.S. at 654, not from an expectation of privacy in the automobile.

The four dissenting and two concurring justices in the *Rakas* decision expressly recognized this distinction. *See* 4 W. LaFave, *Search and Seizure* § 11.3(b), at 294-95 (2d ed. 1987). Justice White, joined by Justices Brennan, Marshall and Stevens, pointed

out in his dissent that the "petitioners of course have standing to challenge the legality of the stop, and the evidence found may be a fruit of that stop . . . Petitioners have not argued that theory here." *Rakas*, 439 U.S. at 160 n.5. Justice Powell, joined by Chief Justice Burger, observed in his concurring opinion that "[t]he petitioners do not challenge the constitutionality of the police action in stopping the automobile in which they were riding; nor do they complain of being made to get out of the vehicle." *Rakas*, 439 U.S. at 150-51.

After *Rakas*, other courts, perceiving the difference between a passenger's standing to object to a *search* of a car in which he or she is riding and his or her standing to question the legality of his or her detention while riding in an automobile, have concluded that a passenger in an automobile has standing to object to the seizure, regardless of the passenger's lack of proprietary or possessory interest in the vehicle. *See, e.g., State v. Haworth*, 106 Idaho 405, 406, 679 P.2d 1123, 1124 (1984); *State v. Eis*, 348 N.W.2d 224, 225 (Iowa 1984); *State v. DeMasi*, 419 A.2d 285, 294 (R.I. 1980), *vacated*, 452 U.S. 934 (1981); *State v. Guzy*, 139 Wis. 2d 663, ____ 407 N.W.2d 548, 553, *cert. denied*, 484 U.S. 979 (1987); *Parkhurst v. State*, 628 P.2d 1369, 1374 (Wyo.), *cert. denied*, 454 U.S. 899 (1981). These decisions recognize that stopping a motor vehicle and detaining its occupants is a seizure of the occupants within the meaning of the fourth and fourteenth amendments. *See State v. Conger*, 183 Conn. 386, ____, 439 A.2d 381, 384 (1981); *see also Prouse*, 440 U.S. at 653; *Haworth*, 106 Idaho at 406, 679 P.2d at 1124; *Guzy*, 139 Wis. 2d at ____, 407 N.W.2d at 553. Although a passenger may not possess the requisite reasonable expectation of privacy in the seized vehicle, "no one has ever challenged the existence of such in regard to one's own person." *Parkhurst*, 628 P.2d at 1374; *see also Eis*, 348 N.W.2d at 226 ("no principled basis exists for distinguishing between the privacy rights of passengers and drivers in a moving vehicle"); *DeMasi*, 419 A.2d at 294 ("the occupants of a moving automobile retain a reasonable interest in personal privacy"); *see* 4 W. LaFave, *supra*, § 11.3(e), at 325 ("[S]urely the passenger has standing to object").

Those cases which have determined that a passenger lacks standing to contest a seizure "are founded on a broad stroke analysis of *Rakas* as simply holding that passengers lack standing to contest government action as to the vehicle." *People v. Jones*, 125

Misc. 2d 91, 95-96, 477 N.Y.S.2d 975, 979 (N.Y. Sup. Ct. 1984). *See, e.g., State v. Cowen,* 104 Idaho 649, 651, 662 P.2d 230, 232 (1983); *Haworth,* 106 Idaho at 406, 679 P.2d at 1124; *Meeks v. State,* 692 S.W.2d 504, 510 (Tex. Crim. App. 1985); *United States v. Cardona,* 524 F. Supp. 45, 47 (W.D. Tex. 1981). The reasoning of these cases is unpersuasive because the cases fail to distinguish between standing to object to a search and standing to object to a seizure, which results in the search that follows.

The majority in this case distinguishes those cases recognizing a passenger's standing to challenge the stop of an automobile because of the "occupant's rightful presence in the vehicle." This concept, usually embodied in the phrase "legitimately on [the] premises," was rejected in *Rakas* as an appropriate measure of fourth amendment rights. *Rakas,* 439 U.S. at 143. The phrase has little analytical value with regard to standing. In some instances, a person's legitimate presence in the area searched may be a factual consideration affecting one's standing. For example, a thief, driving a car he or she has stolen, having no expectation of privacy in the automobile because of having no legitimate presence in it, has no standing to complain of the search of the stolen car. But, "illegitimate presence" does not affect a person's *standing* to question the legality of police restraint of the person himself. *See* 4 W. LaFave, *supra,* § 11.3(e), at 329.

Many of the cases from other jurisdictions relied on by the majority are not helpful because they address standing to contest a *search* of an automobile and do not address standing to object to a police *stop* of the occupants of an automobile. *State v. Abordo,* 61 Haw. 117, 118, 596 P.2d 773, 774 (1979) (challenge to search of unoccupied Volkswagen); *State v. Schad,* 129 Ariz. 557, 562, 633 P.2d 366, 371 (1981), *cert. denied,* 455 U.S. 983 (1982) (challenge to *search* of automobile impounded after defendant was arrested and taken into custody for parole violation); *Graham v. State,* 47 Md. App. 287, 289-90, 421 A.2d 1385, 1387 (1980) (challenge to *search* a backpack and moped); *State v. Purcell,* 586 P.2d 441, 443 (Utah 1978) (challenge to warrant to *search* automobile); *United States v. Lanford,* 838 F.2d 1351, 1353 (5th Cir. 1988) (defendant lacked standing to challenge automobile *search* but had standing to challenge search of his person which was found to be constitutionally permissible); *United States v. Erickson,* 732 F.2d 788, 790 (10th Cir. 1984) (challenge to *search* of airplane); *United States v. Obregon,* 748 F.2d 1371, 1374 (10th

Cir. 1984) (challenge to *search* of rented automobile); *United States v. Roy*, 734 F.2d 108, 110 (2d Cir. 1984) (challenge to *search* of automobile); *United States v. Hensel*, 672 F.2d 578, 579 (6th Cir.), *cert. denied*, 457 U.S. 1107 (1982) (challenge to *search* of stolen truck); *Hargrove*, 647 F.2d at 413 (challenge to search of stolen automobile).

One of the opinions cited by the majority demonstrates the difference between standing to object to a *search* and standing to object to a seizure of a person. In *State v. Ribera*, 183 Mont. 1, 597 P.2d 1164 (1979), the defendant and two companions were stopped in their car by the police, who conducted a search of the defendant and discovered marijuana in his coat pocket. *Id.* at 5, 597 P.2d at 1166. Later, after the defendant, his companions and their car were taken to the police station, the owner, who was driving the car, consented to a search of the vehicle which resulted in the police finding more marijuana. *Id.* The court concluded that (1) because the police were not justified in stopping the automobile, the marijuana found on the defendant's person should have been suppressed, (2) because the defendant was only a passenger in the car, he had no standing to object to the search of the car, and (3) because the facts surrounding the owner's consent to the search constituted an intervening event sufficient to attenuate the taint of the illegal arrest, the marijuana found in the car was admissible. *Id.* at 5, 597 P.2d 1168-69. In other words, the defendant had standing to complain of the illegal stop of the car in which he was riding, even though he had no standing to object to the later *search* of the car. The reasoning of *Ribera* applies to this case: Josephs has standing to object to the *stop* of the car in which she was riding (i.e., the seizure of her person), but has no standing to object to the *search* of the car.

The defendant's guilt of larceny of the vehicle does not strip her of her constitutional privilege. The Constitution is not limited in its application only to those who are innocent. Constitutional protections extend equally to the guilty and the innocent. *Kimmelman v. Morrison*, 477 U.S. 365, 380 (1986). To deny the defendant the opportunity to challenge the legality of the seizure of her person solely because she stole the automobile she was in at the time of her seizure, denies her the right to assert her constitutional protection solely because of her guilt.

Having recognized Josephs' standing to question the legality of the seizure of her person, I would further conclude that seizure was not justified. We previously have concluded that the police may not detain the occupants of a vehicle traveling north on Interstate 95 simply because the vehicle displays Florida license plates indicating it is a rental vehicle and the driver "cut his eyes" in the direction of the unmarked police vehicle. *Taylor v. Commonwealth*, 6 Va. App. 384, 389, 369 S.E.2d 423, 425 (1988) (*en banc*). In this case, the facts are essentially the same, except that the driver of the automobile continued to look straight ahead without averting his eyes when the trooper pulled beside him. Just as the averting of the eyes in *Taylor* did not give rise to a sufficiently particularized suspicion, *id.* at 388, 399 S.E.2d at 425, the failure to avert one's eyes is also insufficient to justify stopping the occupants of a vehicle.[1]

Finally, I would conclude that the marijuana found in the car's trunk was a "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).[2] The illegal stop of the occupants was a cause-in-fact of the later discovery of the marijuana. The driver of the car did not consent to the search, and the police were required to bring a trained dog to locate the presence of the contraband. No intervening cause or event occurred to attenuate the taint of Josephs' illegal detention.

In summary, I would conclude that the defendant has standing to question her detention while riding as a passenger in the stolen vehicle, that the detention violated her fourth amendment rights, that the marijuana was a fruit of that illegal detention, and that the marijuana was inadmissible. I would, therefore, reverse the judgment of conviction without the necessity of addressing the

---

[1] Citing *Taylor*, a panel of this Court in an earlier, separate appeal entered an order reversing the conviction of the driver of the vehicle in which Josephs was a passenger. *See Courtney Wilkins v. Commonwealth*, Record No. 1024-87-2 (March 8, 1989).

[2] The facts of *Wong Sun* provide a near-perfect analogy to the facts of this case. In *Wong Sun*, the police illegally arrested Toy. Following his illegal arrest, Toy told the police Yee had been selling narcotics. The police went to Yee's apartment, arrested Yee and seized narcotics. The Supreme Court concluded that Yee, like Toy, had been illegally arrested and his apartment illegally searched. The narcotics seized from Yee's apartment were found to be inadmissible as against both Toy and Yee. Toy lacked standing to assert a privacy interest in Yee's apartment. Toy, like Josephs in this case, had no expectation of privacy in the area searched. However, the heroin seized from Yee's apartment was suppressed as a "fruit" of Toy's illegal arrest.

sufficiency of the evidence.

Benton, J., dissenting.

I join in Judge Barrow's dissent. In addition, however, I would reverse the conviction because of insufficient evidence.

When a conviction based upon evidence of constructive possession is challenged on appeal, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to [the accused's] dominion and control." *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). "But mere proximity to a controlled drug is not sufficient to establish possession." *Wright v. Commonwealth*, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977). Likewise, "occupancy of . . . [a] vehicle . . . in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance." Code § 18.2-250.

Although Faith Angela Josephs was convicted of larceny of the vehicle, the fact of that conviction adds little to the determination whether Josephs was aware of the presence and character of the marijuana and exercised dominion and control over it. The evidence concerning both the possession of marijuana and the larceny of the vehicle was offered at the same trial proceeding held on February 2, 1987, and is contained in the record on this appeal. Viewed in the light most favorable to the Commonwealth, the evidence established that when the rental vehicle was stopped at 7:40 a.m., Josephs was lying on the back seat of the vehicle with her five year old daughter. The driver of the vehicle gave the police rental documents which listed the lessee as John Crooks but did not contain the name of either the driver or Josephs. The driver was arrested for larceny after the police officer verified that "there was no permission."

On the front bottom corner of the rental form, in letters that are not prominent, are the words "car cannot be driven out of originating state without written permission on 'supplemental special charges form.' General [, the lessor,] not responsible for lost or stolen items." The rear of the form contains a full page of "Terms for renting a General car," including the following lines

under the heading "special charges:"

> I understand that I must have your written permission to return the car to another city. Special charges may apply if I do so. I also understand that I must have your written permission to drive the car outside the state of rental, and special charges may apply if I do so. I acknowledge that I have been furnished with your "Supplemental Special Charges Form" which forms a part of this agreement at time of rental. I agree to pay any such charges in addition to the rates and charges described on the other side of this agreement.

Josephs also was arrested at that time for larceny of the vehicle and was questioned. She denied knowledge of the marijuana and she said "only that she was going to go to New York with this other guy who was driving the car." Josephs pled not guilty to the larceny charges.

Although Josephs has not appealed the larceny conviction, these facts comprise the entire evidence upon which Josephs was convicted of larceny of the vehicle. Thus, we are not required to speculate concerning inferences to be drawn from the facts underlying the larceny conviction. The record before us is a testament to the sparsity of evidence upon which Josephs' conviction was based. On the facts in this record, the majority merely speculates when it infers that Josephs stole the vehicle for the purpose of transporting the marijuana from Miami to New York. For unknown reasons, Josephs did not appeal the larceny conviction. The absence of a petition for appeal from the larceny conviction, however, does not provide a license for the Court to conjure up a scenario of horribles. Based on the facts underlying the larceny conviction, one can only reasonably infer that Josephs was convicted of larceny of the vehicle based solely on her presence as a passenger in a leased vehicle being operated contrary to the lease agreement.

On the possession charge, the evidence establishes that Josephs was a passenger in a vehicle that contained marijuana in its trunk. When the vehicle was stopped at 7:40 a.m. by the state police, Josephs was lying on the backseat with her five year old daughter. Although Josephs' suitcase was in the trunk, there is no evidence that she had placed it there or that she had been in the trunk.

There is also no evidence in this record that, after leaving Dade County, Josephs entered the trunk for her suitcase. The record contains no evidence that the occupants of the vehicle spent the night at a motel or changed clothing. Contrary to the majority's assertion, there is no basis upon which to infer that Josephs carried a suitcase for the purpose of using it on the highway or that she needed or, in fact, used her one piece of luggage during the trip.

The marijuana which was discovered in the trunk was concealed in closed, opaque garbage bags. No marijuana was found on Josephs or in her suitcase. The officer testified that Josephs stated she did not know marijuana was in the trunk. The majority's conclusion that the officer's paraphrase of Josephs' statement, "said she didn't know about drugs. 1st time I've driven with that stuff," proves that Josephs knew marijuana was in the trunk is simply incredible.

The evidence in this record only proves Josephs' proximity to the marijuana. No acts, statements, or other conduct establishes that Josephs was aware of the presence and character of the marijuana and that the marijuana was subject to her control. "A conviction resting on circumstances which cast 'a suspicion of guilt, however strong, or even a probability of guilt is insufficient to support a criminal conviction.'" *Sutphin v. Commonwealth*, 1 Va. App. 241, 244, 337 S.E.2d 897, 898 (1985) (quoting *Bishop v. Commonwealth*, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984)). Because the record contains no evidence sufficient in law to support the conviction, I would reverse the judgment and dismiss the indictment.

Keenan, J., dissenting.

I would reverse Josephs' conviction because I find that the evidence offered by the Commonwealth at trial was insufficient as a matter of law to sustain a conviction for possession with intent to distribute marijuana.

At trial, the evidence before the court was that Josephs and her five year old daughter were travelling in the back seat of a Florida rental car being driven to New York, which was stopped by the police in Hanover, Virginia. Neither Josephs' name nor that of the driver was listed on the rental agreement and the officer testified

that he contacted Florida and received information that the vehicle's occupants were not authorized to have the car. A small suitcase belonging to Josephs was found in the trunk of the car, along with a larger suitcase, which belonged to the driver, and four plastic garbage bags containing 130 pounds of marijuana. The bags were closed but emitted a very strong odor of marijuana. Josephs told the officer that she did not know about the drugs, that she lived in Miami, had left Miami with the driver of the car and was just riding to New York. The officer's notes contained an additional statement made by Josephs after she was arrested: "1st time I've driven with that stuff." Marijuana was not found either on Josephs' person or in the inside of the car. Evidence was presented that Miami was approximately 1000 miles away from Hanover.

"To support a conviction based on constructive possession, the Commonwealth 'must point to evidence of acts, statements, or conduct of the accused, or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.' " *Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986)(quoting *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)); *Behrens v. Commonwealth*, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986). "Suspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction for possession of a controlled substance." *Behrens*, 3 Va. App. at 135, 348 S.E.2d at 432. In essence, the facts show that Josephs had travelled approximately 1000 miles in a car which had a large quantity of narcotics in the trunk, that Josephs was not an authorized occupant of the vehicle, and that her personal luggage was located in the trunk of the vehicle. The Commonwealth introduced only one statement made by Josephs suggesting knowledge of the contents of the trunk and this was made after she had been arrested for possession with intent to distribute marijuana. Viewing this evidence, and all reasonable inferences fairly deducible therefrom, in the light most favorable to the Commonwealth, as is required on appeal, *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988) (citations omitted), I find that this evidence is insufficient to prove that the drugs found in the trunk of the car were constructively possessed by Josephs with an awareness of their character. *See Clodfelter v. Commonwealth*, 218 Va. 619, 623, 238 S.E.2d 820,

822 (1977).

Because I find that the evidence offered at trial by the Commonwealth, even if it was properly admitted, was insufficient as a matter of law, I do not address the issue of standing or admissibility of the evidence as set forth by either the majority or the dissenting opinions. Accordingly, I would reverse the decision of the trial court and dismiss Josephs' conviction for possession with intent to distribute marijuana.