STATE OF HAWAII, Plaintiff-Appellee *v.* ROBERT ABORDO, Defendant-Appellant

NO. 6397

JUNE 19, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ., AND RETIRED JUSTICES MARUMOTO AND KOBAYASHI ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

Robert Abordo (hereinafter appellant) appeals from a judgment of conviction for unauthorized control of a propelled

vehicle in violation of HRS § 708-836 (1976).[1] He asserts, in essence, that the evidence used to secure his conviction was illegally obtained and, thus, should have been excluded by the trial court. We disagree and affirm the judgment below.

On October 21, 1975, two police officers were assigned to check for stolen vehicles in an area of Honolulu known as Salt Lake. The area, according to the testimony of the officers, was known to have a high incidence of automobile theft, especially Volkswagens. After patrolling in their vehicle for approximately two hours, the officers noticed an unoccupied, blue Volkswagen parked in a bushy area of a vacant lot adjacent to a group of apartment buildings. Thereupon, the officers parked their vehicle, entered onto the lot, and proceeded to make a visual inspection of the automobile's exterior and whatever portions of its interior that were visible through its rolled-down windows.

During the course of this examination, the officers radioed police headquarters and requested a vehicle check based on the automobile's license plate number. This check revealed that the license plates were purportedly issued for a 1962 green and white Volkswagen registered in appellant's name. After receiving this information, the officers, according to testimony, began to suspect that the automobile was in fact stolen. First of all, it was apparent to them that the bumpers and rear taillights of the vehicle in question were those that were characteristic of a Volkswagen of a vintage later than

---

[1] This section provides:

§ 708-836 *Unauthorized control of propelled vehicle.* (1) A person commits the offense of unauthorized control of a propelled vehicle if he intentionally exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent or by changing the identity of the vehicle without the owner's consent.

(2) "Propelled vehicle" means an automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle.

(3) It is an affirmative defense to a prosecution under this section that the defendant reasonably believed that the owner would have authorized the use had he known of it.

(4) Unauthorized control of a propelled vehicle is a class C felony.

1962, probably 1967 or 1968. Secondly, the vehicle before them appeared to have been recently painted and was of a color different from what was indicated by the vehicle check. Thirdly, the vehicle was parked in an area where allegedly cars were not normally parked.

To confirm this suspicion, one of the officers then entered the unlocked automobile and lifted the rear seat to expose its vehicle identification number. This number was radioed in to police headquarters and it was soon after established that the automobile was a 1968 Volkswagen which had been previously reported as stolen. After making this discovery, both officers returned to their vehicle and moved to an observation point where they could maintain surveillance of the stolen automobile.

Approximately forty-five minutes thereafter and while one of the police officers had left his vehicle to place a telephone call to headquarters to report the discovery of the stolen automobile, the remaining officer observed three individuals walking in the general direction of the Volkswagen. These individuals then entered the vehicle under surveillance and proceeded to drive away. The officer remaining in the police vehicle radioed for backup units and followed the Volkswagen as it headed onto the H-1 Freeway. Subsequently, the vehicle was stopped and the driver, later identified as appellant, was placed under arrest.

On June 9, 1976, appellant filed a motion which, *inter alia,* sought to exclude the evidence obtained as a result of the search of the vehicle in question. In support of this motion, appellant argued that the failure of the police officers to secure a warrant prior to entering the automobile to expose its vehicle identification number violated his right against unreasonable searches and seizures. In a hearing held on July 2, 1976, the trial court denied said motion on the ground that the officers had probable cause to believe that the vehicle had been stolen and because the presence of exigent circumstances rendered a search warrant unnecessary.

On September 24, 1976, a bench trial was held in which appellant was found guilty of unauthorized control of pro-

pelled vehicle. Thereafter he was sentenced to five years probation and fined $500. This appeal followed.

On appeal, the appellant concedes that there was probable cause for the police officers to search the parked vehicle but argues that the trial court erred in ruling that exigent circumstances justified a warrantless search. The State, on the other hand, contends that appellant has no "standing" to challenge the validity of the search and asserts that, in any event, the search was proper.

The freedom of individuals from unreasonable searches and seizures is a fundamental guarantee provided for by the Fourth Amendment to the United States Constitution and Article I, Section 5 of the Constitution of the State of Hawaii. To effectuate the Fourth Amendment guarantee, the United States Supreme Court has conferred upon defendants in both state and federal criminal prosecutions the right to have excluded from trial evidence which has been obtained by means of an unlawful search and seizure. *Mapp v. Ohio*, 367 U.S. 643 (1961); *Weeks v. United States*, 232 U.S. 383 (1914). Similarly, this court has held that the same protection is accorded by our own state constitution. *See State v. Pokini*, 45 Haw. 295, 367 P.2d 499 (1962).

The ability of a defendant to benefit from the protection of the so-called "exclusionary rule" is, however, not without limitation. The United States Supreme Court has indicated that the "rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968). *See Alderman v. United States*, 394 U.S. 165, 171-76 (1969); *Muncusi v. DeForte*, 392 U.S. 364, 366-70 (1968); *Jones v. United States*, 362 U.S. 257, 260-61 (1960); *Goldstein v. United States*, 316 U.S. 114, 121 (1942); *see also State v. Pokini, supra*. Hence, in a case such as the one at bar, the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and

seizure sought to be challenged. *Rakas v. Illinois*, _____ U.S. _____, _____, 99 S. Ct. 421, 425-29 (1978).[2]

Although the principle permitting only defendants whose own Fourth Amendment rights have been violated to benefit from the protections of the exclusionary rule has often been characterized as a rule of standing, *see, e.g., Mancusi v. DeForte, supra; Jones v. United States, supra; State v. Pokini, supra,* the Court in *Rakas v. Illinois, supra,* reasoned that this limitation

> is more properly subsumed under substantive Fourth Amendment doctrine. Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of "standing," will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.

99 S. Ct. at 428 (footnote omitted). Analyzed in this perspective, our initial inquiry is whether the search and seizure that appellant now challenges infringed any personal interest which the Fourth Amendment was designed to protect.[3]

---

[2] The Court in *Rakas v. Illinois, supra,* noted that "[t]he necessity for showing a violation of personal rights is not obviated by recognizing the deterrent purpose of the exclusionary rule." 99 S. Ct. at 425 n.3. As explained in an earlier decision:

> The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to [those defendants who merely assert violations of another's Fourth Amendment rights] would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth.

*Alderman v. United States, supra* at 174-75.

[3] Of course, had the appellant in this case been charged with a possessory crime (i.e., a crime for which possession is an essential element), the rule of "automatic standing" established in *Jones v. United States, supra* at 261-65, may have been invoked and, under such circumstances, the need for this type of inquiry would be vitiated.

The principal guideline for defining the scope of the interest protected by the Fourth Amendment was set forth in *Katz v. United States*, 389 U.S. 347 (1967). Prior to that decision, neither wiretapping nor electronic eavesdropping violated defendant's Fourth Amendment rights unless the government had been guilty of some actual physical invasion. *See Olmstead v. United States*, 277 U.S. 438 (1928); *Goldman v. United States*, 316 U.S. 129 (1942). The Court in *Katz*, however, repudiated this "trespass" doctrine and held, essentially, that the capacity to invoke the protection of the Fourth Amendment depends not on a property interest in the place intruded upon but on whether the person seeking the protection of the Amendment had a legitimate expectation of privacy in the invaded place. 389 U.S. at 353, 360-61 (Harlan, J., concurring). *See United States v. Chadwick*, 433 U.S. 1, 7-11 (1977); *State v. Stachler*, 58 Haw. 412, 570 P.2d 1323 (1977).

In determining whether, in any given circumstance, a legitimate expectation of privacy exists, two different considerations come into play: first, the individual involved must have exhibited an actual expectation of privacy; second, the expectation must be one that society is prepared to acknowledge as reasonable. *Katz v. United States*, 389 U.S. at 360-61 (Harlan, J., concurring); *Rakas v. Illinois, supra; State v. Kaaheena*, 59 Haw. 23, 575 P.2d 462 (1978); *State v. Boynton*, 58 Haw. 530, 574 P.2d 1330 (1978); *State v. Stachler, supra*. In *Rakas v. Illinois, supra*, it was held, *inter alia*, that mere passengers in an automobile — who asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized — failed to establish any Fourth Amendment violation since they could not demonstrate that they had any legitimate expectation of privacy in the places searched — namely, the car's glove compartment and the area under the seat of the car. 99 S. Ct. at 433. As explained by the Court:

[A] "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which

the law recognizes as "legitimate." His presence, in the words of *Jones*, 362 U.S. at 267, is "wrongful"; his expectation is not "one that society is prepared to recognize as 'reasonable.' " *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). . . . Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. . . . Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in *Jones, supra*, and *Katz, supra*.

99 S. Ct. at 430-31 n.12.

Judged on the foregoing principles, we do not believe that appellant should have been able to avail himself to the benefits of the exclusionary rule. Although he may have had an actual expectation of privacy with respect to the particular portion of the vehicle searched, this court is of the opinion that such an expectation was not one which society is willing to recognize as legitimate. *See State v. Pokini*, 45 Haw. at 313-316, 367 P.2d at 509-10; *Palmer v. State*, 14 Md. App. 159, 286 A.2d 572 (1972), *and the cases cited therein*.[4] Appellant did not assert any interest in the automobile searched, nor did he claim an interest in the vacant lot on which the search was conducted. Simply stated, his possession of the thing searched was wrongful. Under these circumstances, we fail to discern any constitutionally recognized privacy interest arising in appellant's favor.

---

[4] In rendering this decision, we are mindful of numerous instances where the United States Supreme Court has indicated that automobiles are not to be treated the same as houses or other dwelling places for Fourth Amendment purposes. *See Rakas v. Illinois*, 99 S. Ct. at 433; *United States v. Chadwick*, 433 U.S. at 12; *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976); *Cardwell v. Lewis*, 417 U.S. 583, 589-592 (1974) (plurality opinion); *Almeida-Sanchez v. United States*, 413 U.S. 266, 279 (1973) (Powell, J., concurring.)

Having reached this conclusion, it is unnecessary to consider appellant's claim that a warrant should have been procured before the challenged search and seizure took place. Since the search did not violate any rights of appellant, his judgment of conviction is affirmed.

*John H. Robinson* for Defendant-Appellant.

*Arthur Ripley*, Deputy Prosecuting Attorney, for Plaintiff-Appellee.