STATE OF HAWAII, Plaintiff-Appellee, *v.* LAWRENCE WAH KWAI NARVAEZ, Defendant-Appellant, and SAMSON FER-NANDEZ, JR., Defendant

NO. 10928

(CRIMINAL NO. 85-0143)

AUGUST 1, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

570

OPINION OF THE COURT BY HAYASHI, J.

Defendant-Appellant Lawrence Wah Kwai Narvaez (hereinafter "Narvaez") appeals from the denial of his Motion to Dismiss Indictment with Prejudice. The trial court ruled Narvaez lacked the standing to suppress the illegally obtained statements of co-defendant Samson Fernandez, Jr. (hereinafter "Fernandez"), which implicated Narvaez in a robbery. Narvaez concedes the majority of case law supports the position of Plaintiff-Appellee State of Hawaii (hereinafter "State") that, under the traditional analysis of the exclusionary rule and the "fruit of the poisonous tree" doctrine, only those whose constitutional rights have been directly violated have standing to suppress such evidence. Narvaez contends, however, that he was denied his due process right to challenge the evidence against him because the information leading to his arrest was a "fruit" of the suppressed interrogation. We disagree and affirm the trial court ruling for the reasons stated below.

I.

Narvaez was arrested by Honolulu Police Department Detective O'Hannigan on May 3, 1984 for his alleged involvement in a February 20, 1984 robbery of three servicemen. Detective O'Hannigan testified the arrest was based solely on information provided during an interrogation of Fernandez. Narvaez's photograph was included in an album

for photographic identification and was subsequently identified by all three victims as a photograph of one of the robbers. On February 6, 1985, Narvaez was indicted for three counts of first degree robbery in violation of Hawaii Revised Statutes § 708-840(1)(b)(ii) (Supp. 1984).[1]

On April 25, 1985, Fernandez filed a Motion to Suppress Oral Statement, Tapes and Fruits of Same alleging the police illegally obtained the incriminating evidence in violation of his Fifth Amendment rights. The trial court granted the motion on June 12, 1985 when the State raised no objection.

Narvaez then moved to dismiss his indictment with prejudice, asserting that, since his arrest was based solely on the suppressed statements of his co-defendant, the subsequent identification of Narvaez should also have been suppressed as a "fruit" of the illegal statement. Narvaez contended that use of such evidence denied him due process "because the police should not be in a position to use illegally obtained evidence to further an investigation or prosecution against another person." Transcript, May 15, 1985 at 5.

The trial court denied the motion to dismiss because 1) Narvaez failed to establish that the grand jury did not have sufficient evidence to indict him; 2) the suppression of Fernandez's statement did not provide Narvaez with the necessary standing to challenge his indictment; and 3) there was no legal authority which supported the conclusion that Narvaez could vicariously assert a violation of Fernandez's constitutional rights. Transcript, May 17, 1985 at 16-17.

The case then went to trial. Narvaez was convicted on all three counts of first-degree robbery and sentenced to three concurrent twenty year terms of imprisonment. Judgment and sentence were entered on August 30, 1985, and the Notice of Appeal was timely filed on September 30, 1985.

---

[1]This statute reads:

§ *708-840   Robbery in the first degree.*  (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

(b) He is armed with a dangerous instrument and:

. . . . .

(ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

The sole issue on appeal is thus whether the trial court abused its discretion by denying the Motion to Dismiss Indictment with Prejudice, where the only evidence leading to Narvaez's arrest and indictment was an illegally obtained and subsequently suppressed statement of a co-defendant and the fruits of that statement.

## II.

Narvaez argues that the illegally obtained evidence should not have been used against him whether or not he had standing under traditional exclusionary rule analysis.[2] The majority of case law addressing the question of standing to raise the violations of a co-defendant's personal rights relate to the Fourth Amendment. The present case, on the other hand, concerns the illegally obtained statements which violated co-defendant Fernandez's Fifth Amendment rights. It seems clear, however, that an analogy may be drawn between Fourth and Fifth Amendment violations, since both concern rights which are personal to the individual. *See Boyd v. United States,* 116 U.S. 616, 633 (1886) (there is an intimate relation between the two amendments, and they throw great light on each other).

In order to assert legal standing under traditional exclusionary rule analysis, an individual's personal rights must have been violated. The

---

[2]Narvaez relies on a 1955 California Supreme Court decision, *People v. Martin,* 45 Cal. 2d 755, 290 P.2d 855 (1955), in support of his position. *Martin* held "that the purpose of the exclusionary rule is not to provide redress or punishment for a past wrong, but to deter lawless enforcement of the law." *Id.* at 760, 290 P.2d at 857. *Martin* concluded:

> Since all of the reasons that compelled us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights.

*Id.* at 761, 290 P.2d at 857.

California appears to have stood alone in allowing a defendant vicarious standing to assert the violation of another's constitutional rights. The 1982 adoption of Proposition 8 in California added § 28(d) to article I of the California Constitution. The section provides, *inter alia:* "Except as provided by statute hereafter enacted by a two thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding. " *See In re Lance W.,* 37 Cal. 3d 873, 694 P.2d 744, 210 Cal. Rptr. 631 (1985) (the California constitutional amendment providing that relevant evidence shall not be excluded in any criminal proceeding, abrogated the "vicarious exclusionary rule" under which a defendant had standing to object to the introduction of evidence seized in violation of the rights of a third person).

United States Supreme Court ruled the "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." *Alderman v. United States,* 394 U.S. 165, 171-72 (1969).

In *State v. Abordo,* 61 Haw. 117, 596 P.2d 773 (1979), however, we analyzed this question under the substantive Fourth Amendment doctrine rather than under the notion of standing. We quoted *Rakas v. Illinois,* 439 U.S. 128, 139 (1978) (footnote omitted), as follows:

> The inquiry under either approach is the same. But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.

*Abordo,* 61 Haw. at 121, 596 P.2d at 776. Applying this approach to the case at bar, the initial question must be whether any of Narvaez's interests, protected by the Fifth Amendment privilege against self-incrimination, were violated.

Since Fernandez's statements were made in violation of his Fifth Amendment right against self-incrimination, they were suppressed from use against Fernandez at trial. Narvaez argues that, since he was barred from challenging these statements which implicated him in the alleged robbery, he was denied due process under the Sixth Amendment guarantee that every accused will "be confronted with the witnesses against him." In order for Narvaez to prevail, the interests that he alleges were disregarded must be interests protected by the Fifth Amendment.

The constitutional privilege against self-incrimination protects the individual from being forced to testify against himself, placing the burden on the State to establish its case. The privilege never intended to protect third parties from being implicated by the testimony of an accused, *Hale v. Henkel,* 201 U.S. 43 (1906), nor attempted to ascertain the truth, *Tehan v. Schott,* 382 U.S. 406 (1966). Rather, the fundamental purpose of this privilege is to prevent the State from arbitrary use of its power against individuals. *Id.* at 415-16.

The Confrontation Clause of the Sixth Amendment serves a different function altogether. Its essential purpose is to secure the right of an accused to cross-examine any and all witnesses against him. *Douglas v. Alabama,* 380 U.S. 415 (1965). Cross-examination allows the accused

the opportunity to challenge the credibility and veracity of testimony by State witnesses. *Davis v. Alaska,* 415 U.S. 308 (1974). The overarching "mission" of this clause is to advance a practical concern for the accuracy of the truth-determining process of criminal trials. *Dutton v. Evans,* 400 U.S. 74 (1971); *see Green v. McElroy,* 360 U.S. 474 (1959) (an important function of the right to cross-examination is exposure of a witness' motivation in testifying).

The interests protected by the Fifth Amendment privilege against self-incrimination and those safeguarded under the Sixth Amendment guarantee of confrontation are not the same. While the former protects the accused from the State's use of arbitrary power to compel self-incrimination even at the expense of truth, the latter protects the individual from the incriminating testimony of others in an attempt to ascertain the truth. Since Narvaez claims an abrogation of interests which are not protected under the Fifth Amendment, he lacks standing to assert them in the instant case.[3]

Affirmed.

*Dwight T. Tanaka (Ronald K. Kotoshirodo* with him on the briefs; *Kotoshirodo & Tanaka,* of counsel), for Defendant-Appellant.

*George Yamamoto (Arthur E. Ross,* and Law Clerk *Neal Kugiya,* on the brief), Deputy Prosecuting Attorneys, for Plaintiff-Appellee.

---

[3]This does not necessarily preclude, however, an instance where a trial court may dismiss an indictment when the interests of justice require. *See State v. Alvey,* 67 Haw. 49, 678 P.2d 5 (1984). If the police conduct is outrageous and "shocks the conscience," due process may apply to bar prosecution. *State v. Tookes,* 67 Haw. 608, 699 P.2d 983 (1985). A defendant, though, must show actual prejudice to his due process rights. *See State v. Lincoln,* 3 Haw. App. 107, 643 P.2d 807 (1982). The police conduct in the instant case, though, did not violate Narvaez's due process rights.