STATE OF HAWAI`I, Plaintiff-Appellee,
v.
DIETER OFFERMAN, Defendant-Appellant.
No. 27923
Intermediate Court of Appeals of Hawaii.
July 17, 2008.
On the briefs:
Phyllis J. Hironaka, Deputy Public Defender, for Defendant-Appellant.
Kristin E. Izumi-Nitao, Deputy Attorney General, Department of the Attorney General, for Plaintiff-Appellee.

MEMORANDUM OPINION
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
Defendant-Appellant Dieter Offerman (Offerman) appeals from the Judgment filed on April 7, 2006, in the Circuit Court of the First Circuit (circuit court).[1] Offerman was indicted on charges of dissemination of child pornography, in violation of Hawaii Revised Statutes (HRS) § 707-751(1)(a) (Supp. 2007)[2] (Count I), and possession of child pornography, in violation of HRS § 707-752(1)(a) (Supp. 2007)[3] (Count II). Offerman entered conditional pleas of guilty to both counts, reserving the right to appeal the circuit court's denial of his motion to suppress evidence. The circuit court sentenced Offerman to concurrent terms of imprisonment of ten years on Count I and five years on Count II.
On appeal, Offerman asserts that the circuit court erred by: 1) denying Offerman's motion to suppress evidence that was obtained as the result of an administrative subpoena; 2) failing to sua sponte recuse itself from sentencing Offerman; and 3) sentencing Offerman to unwarranted terms of imprisonment. We affirm.

BACKGROUND
On February 7, 2005, Special Agent Nixon Medina discovered videos and pictures of child pornography in a shared folder[4] on a Haman computer with Internet Protocol (IP) address 24.161.143.172. On February 15, 2005, the Attorney General of the State of Haman (Attorney General) served an administrative subpoena on Internet Service Provider (ISP) Oceanic Time Warner Cable (Oceanic), requesting subscriber information[5] regarding the customer who occupied that IP address during a specified period on February 7, 2005. The subpoena was two-sided and written on the back was a section entitled "RECIPIENT'S RIGHTS" (hereinafter the "Recipient's Rights Section"), which explained the rights of the recipient and the procedure for enforcing and contesting the subpoena. The subpoena also stated: "You are further commanded not to release any information concerning this subpoena without approval from the First Circuit Court, State of Hawaii. To do so could interfere with an on-going criminal investigation."
Oceanic did not object to the subpoena, and on February 22, 2005, it faxed Special Agent Medina a letter identifying Offerman as the occupant of IP address 24.161.143.172. on the date and time in question and providing Offerman's address, phone number, and user names.
On March 1, 2005, law enforcement authorities executed a search warrant for Offerman's residence and seized an iMac computer and numerous DVDs and CDs. A forensic examination of Offerman's computer, DVDs, and CDs revealed over 100 videos and images of child pornography.
After he was indicted, Offerman filed a motion to suppress evidence obtained as a result of the administrative subpoena, arguing that the subpoena was defective because it: 1) failed to "contain" a statement of the recipient's rights as required by HRS 28-2.5(c)(4) (1993);[6] and 2) improperly commanded Oceanic to not release any information regarding the subpoena without approval from the circuit court. The circuit court denied the motion, and it issued the following conclusions of law in support of its decision:
CONCLUSIONS OF LAW
1. Hawaii Revised Statutes Section 803-47.6(2)(D) mandates providers of electronic communication to disclose records or other subscriber information to governmental entities if presented with an administrative subpoena that was issued pursuant to section 28-2.5 of the Hawaii Revised Statutes.
2. The requirements for an administrative subpoena are codified in Section 28-2.5(c) of the Hawaii Revised Statutes. One of the requirements is that the subpoena shall contain a short, plain statement of the recipient's rights and the procedure for enforcing and contesting the subpoena.
3. AG subpoena No. 2005-033 complies with all of the requirements of Hawaii Revised Statutes Section 28-2.5(c). All of the required language is contained on one piece of paper, either on the front or the back of the subpoena. The short, plain statement of the recipient's rights and the procedure for enforcing and contesting the subpoena is on the back of the subpoena and is contained within the subpoena.
4. The Attorney General's office was not attempting to hide the Recipient's Rights by including it on the back of the document. In fact, the Department of the Prosecuting Attorney also utilizes a two-sided administrative subpoena with the recipient's rights located on the back of the document.
4.[sic) The court itself utilizes documents that are two-sided such as the Waiver of Indictment/Trial by Jury and the District Court Complaint with the obvious intent that items and information on the back of the document are contained within the document.
5. The language in AG subpoena No. 2005-033, which commanded the recipient of the subpoena, Oceanic Time Warner Cable, to not release any information concerning the subpoena without approval from the First Circuit Court, did not in any way deny Oceanic Time Warner Cable of its right to contest the subpoena or in any way inhibit Oceanic Time Warner Cable from its ability to seek counsel.
6. The State included the non-disclosure language in order to try and preserve the evidence of the crime.
7. The language was not an absolute bar to disclosure. If Oceanic Time Warner Cable had an issue with non-disclosure then it was informed that it merely needed to raise the issue with the Circuit Court of the First Circuit.
8. It is clear that Oceanic Time Warner Cable does not have an issue with non-disclosure. First, they are not the party contesting the subpoena. Secondly, Oceanic Time Warner Cable in its own Subscriber Privacy Notice informs its subscribers that information may be released to a governmental entity without any notice to the subscriber and without the subscriber's consent.
9. AG subpoena No. 2005-033 contained all of the information as required by Hawaii Revised Statutes Section 28-2.5. It was a valid subpoena. The information that was received pursuant to the subpoena was obtained legally and properly. Any evidence that arose from the information provided by the administrative subpoena is in no way tainted or fruit of the poisonous tree.
Offerman entered conditional guilty pleas to both counts in this case and was sentenced to concurrent terms of imprisonment of ten and five years. Offerman filed a motion for reduction of sentence, which was denied on September 8, 2006.

DISCUSSION

I.
HRS § 803-47.6(d)(2)(D) (Supp. 2000)[7] and 18 U.S.C. § 2703(c) (2),[8] which is part of the federal Electronic Communications Privacy Act (ECPA) on which HRS § 803-47.6(d) (2)(D) was modeled,[9] require an internet service provider to disclose subscriber information if served with an administrative subpoena. The subscriber information provided by Oceanic in response to the Attorney General's subpoena was used to obtain a search warrant for Offerman's residence. The execution of the warrant resulted in the recovery of videos and images of child pornography from Offerman's computer, DVDs, and CDs.
As he argued in the court below, Offerman argues on appeal that the circuit court erred in denying his motion to suppress the evidence obtained as the result of the Attorney General's subpoena because the subpoena: (1) failed to "contain" a statement of the recipient's rights as required by HRS § 28-2.5(c)(4); and (2) improperly commanded the recipient of the subpoena not to release information regarding the subpoena without approval from the circuit court. We conclude that the circuit court did not err in denying Offerman's motion to suppress evidence.

A.
Offerman contends that the subpoena did not "contain" the statement of rights and procedures required by HRS § 28-2.5(c)(4) because the Recipient's Rights Section was placed on the back side of the subpoena. We disagree. The subpoena served on Oceanic was a single piece of paper with print on both sides. The Recipient Rights Section appears in legible, bold print on the back side of the document.[10] Neither the plain language of HRS § 28-2.5(c)(4) nor its legislative history indicates that the Legislature intended to prohibit the placement of the required statement of rights and procedures on the back side of the subpoena. We conclude that the back side of the subpoena was part of the subpoena, and therefore, the subpoena issued to Oceanic contained the Recipient's Rights Section and complied with HRS § 28-2.5(c)(4).

B.
We are not aware of any authority (and none is cited by Plaintiff-Appellee State of Hawai`i) that would permit the Attorney General to command the recipient of an administrative subpoena for subscriber information not to release information concerning the subpoena to the subscriber without approval from the circuit court. However, assuming that the Attorney General's non-disclosure directive was improper, we conclude that the inclusion of the non-disclosure directive in the subpoena does not warrant the suppression of evidence obtained as a result of the subpoena.
It is well settled that "the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and seizure sought to be challenged." State v. Abordo, 61 Haw. 117, 120-21, 596 P.2d 773, 775 (1979); State v. Balberdi, 90 Hawai`i 16, 21, 975 P.2d 773, 778 (App. 1999). We conclude that Offerman had no expectation privacy in the subscriber information obtained by the Attorney General's Office pursuant to the administrative subpoena. See Freedman v. America Online, Inc., 412 F. Supp. 2d 174, 181-83 (D. Conn. 2005); United States v. Sherr, 400 F. Supp. 2d 843, 848 (D. Md. 2005). Federal courts, which have examined this issue in the context of subscriber information obtained pursuant to the ECPA, have uniformly held that a subscriber does not have a reasonable expectation of privacy in the subscriber information he or she provides to an internet service provider. United States v. Perrine, 518 F.3d 1196, 1204-05 (10th Cir. 2008) (citing numerous cases reaching this result). Because the subscriber has no expectation of privacy in the subscriber information he or she provides, courts have denied motions to suppress evidence even when the evidence was derived from subscriber information obtained pursuant to a defective subpoena, summons, or court order. United States v. Hambrick, 55 F. Supp. 2d 504, 506-09 (W.D. Va. 1999) (defective subpoena), aff'd, 225 F.3d 656 (4th Cir. 2000); Sherr, 400 F. Supp. 2d at 848 (defective summons); United States v. Kennedy, 81 F. Supp. 2d 1103, 1108-10 (D. Kan. 2000) (defective court order).
In this case, Offerman failed to demonstrate that he had an expectation of privacy in the subscriber information disclosed by Oceanic in response to the subpoena. Offerman also did not demonstrate that he had a right to prior notification from Oceanic of its disclosure of his subscriber information. Oceanic's disclosure policy advised subscribers such as Offerman that "under ECPA the government may require [Oceanic] or your ISP to disclose subscriber record information (but not the content of communications) pursuant to a warrant, court order or subpoena without any notice to you and without your consent." (Emphasis added.) Accordingly, Offerman did not meet his burden of establishing that the non-disclosure directive in the in subpoena violated personally-held rights that warranted the suppression of the evidence.[11]

II.
Offerman argues that Judge Alm should have sua sponte recused himself because he was predisposed to impose harsh sentences on defendants in child pornography cases. We disagree.
Offerman did not request that Judge Alm recuse himself at any time during the trial court proceedings. We therefore review for plain error Offerman's claim that Judge Alm erred by failing to recuse himself. State v. Gomes, 93 Hawai`i 13, 17-18, 995 P.2d 314, 318-19 (2000); State v. Lioen, 106 Hawai`i 123, 128, 102 P.3d 367, 372 (App. 2004).

A.
Offerman suggests that comments Judge Alm made while previously employed as the United States Attorney for the District of Hawai`i raised concerns that the judge was predisposed to impose harsh sentences in child pornography cases and thus should have recused himself.[12] At the hearing on his motion to reduce sentence, Offerman cited two newspaper articles appearing in 1998 and 1999 as support for his concerns. The articles contained comments made by Judge Alm while he was the U.S. Attorney indicating that the U.S. Attorney's Office took child pornography cases seriously and would vigorously pursue child pornography offenses.
We conclude that comments made by Judge Alm while he was the U.S. Attorney did not warrant his recusal. The cited comments fell considerably short of showing that Judge Alm lacked the ability to be fair and impartial. "[T]he mere fact that a judge has previously expressed an opinion on a point of law, or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense," is ordinarily not enough to "satisfy the requirements for disqualification under [28 U.S.C.] § 455(a)[13]." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (citations omitted); see also In re Bousloq, 41 Haw. 270, 279 (1956) ("[A]n impersonal prejudice resulting from the judge's background, association or experience . . . is not sufficient" to warrant disqualification); Southern Pacific Communications Co. v. American Tel. and Tel. Co., 740 F.2d 980, 990 (D.C. Cir. 1984) ("It is well established that the mere fact that a judge holds views on law or policy relevant to the decision of a case does not disqualify him from hearing the case."); City of Cleveland v. Cleveland Elec. Illuminating Co., 503 F. Supp. 368, 377 (N.D. Ohio 1980) ("It is " not sufficient if the alleged bias or prejudice arises out of the judge's background and associations rather than his appraisal of the complaining party personally . . . ").

B.
Offerman contends that comments made by Judge Alm during the sentencing proceedings "evidence a bias or prejudice against defendants charged with child pornography offenses which clouded his ability to impartially sentence Offerman. . . ." Offerman specifically cites the following comments made by Judge Alm at Offerman's sentencing hearing: "And, you know, many words came to mind when I look at the, you know, the charges that you're faced with and that you have plead [sic] guilty to: horrifying, abusive, degrading, vile. Sad certainly stands out but exploitative certainly stands out as well." Offerman argues that these comments "evidence, at a minimum, an appearance of impropriety such that the judge should have sua sponte recused himself from sentencing Offerman." Offerman's arguments are without merit.
When viewed in context, Judge Alm's comments did not reflect an improper personal bias or prejudice or suggest an appearance of impropriety in his presiding over Offerman's sentencing. The record shows that Judge Alm's comments were made in reference to his having viewed some of the child pornography seized from Offerman and involved an expression of the judge's view that the child pornography offenses that Offerman committed were not victimless crimes:
The  just briefly in what I saw was just very disturbing. You see anal penetration with what appears to be, I don't know, a three-year-old, four-year-old, five-year-old. The image that stays with me that  that I found, you know, that I thought it was disturbing was that a child was being raped. The little girl was on her back, she looked to be, I don't know, five, six, seven, and the rapist's hands went virtually all the way around her leg, her upper thigh, which showed how small she was.
Was there a victim in this kind of a thing? There certainly was when that video was made. And the more people look at that, when people download that, they are  they are  that is being disseminated further, there's a receptive audience for that when people look at it. People could run into all kinds of things on the Internet but it ends there. But when people are intentionally collecting stuff like this and looking at it, that just allows this type of behavior to  to reoccur or to encourage it.
And of course no faces of the offenders were shown but that's not surprising. And, you know, many words came to mind when I look at the, you know, the charges that you're faced with and that you have plead [sic] guilty to: horrifying, abusive, degrading vile. Sad certainly stands out but exploitative certainly stands out as well. And it certainly is true that if there is no market for this, there is a reduced likelihood that something would happen to begin with.
(Emphasis added.)
Under HRS § 706-606 (1993), a sentencing court is required to consider a number of factors, including 1) the nature and circumstances of the offense; and 2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. Judge Alm's comments were made in the course of his analysis of the factors he was required to consider under HRS § 706-606 and were related to his application of these sentencing factors to Offerman's case. Because Judge Alm's comments were made in furtherance of the requirements of HRS § 706-606, the fact that Judge Alm described the evidence he reviewed and the nature, circumstances, and seriousness of Offerman's offenses in harsh terms, "without more, cannot be construed as an expression of the judge's bias or prejudice." State v. Ortiz, 91 Haw. 181, 195-97, 981 P.2d 1127, 1141-43 (1999) (holding that the judge's comments during sentencing that the defendant was a "menace to society" and had devoted his life to a pursuit of financial gain through crime were not improper and did not warrant the judge's disqualification upon retrial); see Liteky v. United States, 510 U.S. 540, 555 (1994) (stating that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"). Based on our review of the record, we find nothing to indicate that Judge Alm harbored any bias, prejudice, or predisposition that warranted his recusal in this case.

III.
Offerman contends that Judge Alm abused his discretion in imposing concurrent indeterminate terms of imprisonment that were unwarranted and unduly harsh.
A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions.
State v. Kahapea, 111 Hawai`i 267, 278, 141 P.3d 440, 451 (2006) (brackets and quotation marks omitted; block quote format changed).
We conclude that Judge Alm did not abuse his discretion in imposing sentence. Judge Alm thoroughly discussed and explained his application of 1) the factors to be considered in imposing a sentence set forth in HRS § 706-606 and 2) the factors to be considered in determining whether to impose a term of probation set forth in HRS § 706-621 (1993 & Supp. 2007). Judge Alm's remarks show that he found and weighed factors both in favor of and against Offerman.
Clearly, Judge Alm's evaluation of the relevant sentencing factors and the weight he assigned to them differed from that recommended by Offerman. However, the weight to be given relevant sentencing factors is a matter generally left to the discretion of the sentencing court, and that court is "afforded wide latitude in the selection of penalties from those prescribed. . . ." State v. Akana, 10 Haw. App. 381, 386, 876 P.2d 1331, 1334 (1994). The Legislature determined that a person convicted of the child pornography offenses committed by Offerman may be sentenced to indeterminate terms of imprisonment of ten and five years, with the Hawai`i Paroling Authority responsible for determining the actual term of imprisonment the defendant would serve before being paroled. See HRS §§ 706-660 (1993), 706-669 (1993 & Supp. 2007), and 706-670 (1993 & Supp. 1996). It was within Judge Alm's discretion to evaluate and weigh the relevant sentencing factors differently than Offerman.

CONCLUSION
The April 7, 2006, Judgment of the circuit court is affirmed.
NOTES
[1] The Honorable Steven S. Alm presided.
[2] HRS § 707-751(1)(a) (Supp. 2007) provides:

§ 707-751 Promoting child abuse in the second degree. (1) A person commits the offense of promoting child abuse in the second degree if, knowing or having reason to know its character and content, the person:
(a) Disseminates child pornography[.]
[3] HRS § 707-752(1)(a) (Supp. 2007) provides:

§ 707-752 Promoting child abuse in the third degree. (1) A person commits the offense of promoting child abuse in the third degree if, knowing or having reason to know its character and content, the person possesses:
(a) Child pornography[.]
[4] Files in a "shared folder" can be accessed by other Internet users.
[5] The subpoena sought "the identity of the account holder and all sub-accounts, billing address, method of payment, account status, and the address of service if different from the billing address."
[6] HRS § 28-2.5 (1993) provides in relevant part as follows:

§ 28-2.5 Investigations. (a) The attorney general shall investigate alleged violations of the law when directed to do so by the governor, or when the attorney general determines that an investigation would be in the public interest.
(b) The attorney general, when conducting a civil, administrative, or criminal investigation, or the county prosecuting attorneys, when conducting a criminal investigation in their respective jurisdictions, may, subject to the privileges enjoyed by all witnesses in this State, subpoena witnesses, examine them under oath, and require the production of any books, papers, documents, or other objects designated therein or any other record however maintained, including those electronically stored, which are relevant or material to the investigation.
(c) A subpoena issued under subsection (b):
(1) Shall state the name of the issuing authority and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein, and may also command the person to whom it is directed to produce books, papers, documents, or other objects specifically designated therein;
(2) May be served by any police officer or by any employee of the issuing authority who has the powers of a police officer at any place within the jurisdiction of the issuing authority;
(3) Shall require attendance of the witness only in the county wherein the witness is served with the subpoena or at such other place as is agreed upon by the witness and the issuing authority; provided that if the subpoena is served in a county other than that in which the witness resides or is employed or transacts the witness' business in person, the issuing authority shall bear the expense of travel by the witness to and attendance at the place named in the subpoena to the same extent as provided by the rules of court; and
(4) Shall contain a short, plain statement of the recipient's rights and the procedure for enforcing and contesting the subpoena.
(Emphasis added.)
[7] At the time relevant to this case, HRS § 803-47.6(d) (2) (D) (Supp. 2000) provided as follows:

[(d)1(2) A provider of electronic communication or remote computing services shall disclose a record or other information pertaining to a subscriber or customer of such service (other than the contents of an electronic communication) to a governmental entity only when:
. . .
(D) Presented with an administrative subpoena issued pursuant to section 28-2.5 or a grand jury or trial subpoena, which seeks the disclosure of information concerning electronic communication, including but not limited to the name, address, local and long distance telephone toll billing records, telephone number or other subscriber number or identity, length of service of a subscriber to or customer of the service, and the types of service utilized by the subscriber or customer.
[8] 18 U.S.C. § 2703(c) (2) provides as follows:

[(c)](2) A provider of electronic communication service or remote computing service shall disclose to a governmental entity the
(A) name;
(B) address;
(C) local and long distance telephone connection records, or records of session times and durations;
(D) length of service (including start date) and types of service utilized;
(E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
(F) means and source of payment for such service (including any credit card or bank account number),
of a subscriber to or customer of such service when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1).
[9] See Sen. Stand. Comm. Rep. No. 1362, in 1989 Senate Journal at 1316 (discussing bill the became Act 164, 1989 Haw. Sess. L. Act 164, at 304-23); Sen. Stand. Comm. Rep. No. 3318, in 2000 Senate Journal at 1384 (discussing bill that became Act 91, 2000 Haw. Sess. L. Act 91, at 183-84).
[10] Offerman does not dispute that the Recipient's Rights Section satisfied the content requirements of HRS 28-2.5(c) (4), namely, "a short, plain statement of the recipient's rights and the procedure for enforcing and contesting the subpoena."
[11] Marsland v. First Hawaiian Bank, 70 Haw. 126, 764 P.2d 1228 (1988), a case cited by Of ferman, is distinguishable. Marsland involved a prior version of HRS § 28-2.5 (Supp. 1987) which precluded the Attorney General from issuing an administrative subpoena "when the matter under investigation is the subject of a civil or criminal adjudication, or when the attorney general or a designated subordinate, determines that an adjudication is more probable than not," in which case the attorney general was "subject to the relevant rules of court and shall exercise subpoena powers no different than those available to the probable opposing party." Marsland, 70 Haw. at 129 n. 3, 764 P.2d at 1230 n. 3. The Prosecuting Attorney for the City and County of Honolulu (Prosecutor) had issued an administrative subpoena to a bank for customer records in circumstances where the use of an administrative subpoena was prohibited under HRS § 28-2.5 but arguably permitted under a city ordinance. Id. at 127-32, 764 P.2d at 1229-32. The bank refused to honor the subpoena, and the trial court denied the Prosecutor's motion to compel production of the subpoenaed documents. Id. at 127-28, 764 P.2d at 1229-30. On appeal, the Hawai`i Supreme Court held that the Prosecutor derived its prosecutorial power from the Attorney General and thus was bound by the restrictions set forth in HRS § 28-2.5. Id. at 130-32, 764 P.2d at 1230-32. Because HRS § 28-2.5 precluded the Prosecutor's use of an administrative subpoena to obtain the subpoenaed records, the court upheld the denial of the Prosecutor's motion to compel. Id.

Unlike in Marsland, the relevant statutes in this case permit the use of an administrative subpoena to obtain the requested subscriber information from Oceanic. In addition, Oceanic, the recipient of the subpoena, did not object to the subpoena or the production of the requested subscriber information. We conclude that Marsland is inapposite.
[12] At the hearing on Offerman's motion to reduce sentence, Offerman raised concerns that Judge Alm was predisposed to impose a harsh sentence based on comments made by the judge during his prior employment. Offerman quotes portions of the hearing transcript in which he raised these concerns in the statement-of-the-case section of his opening brief and refers to this transcript in his points of error on appeal. The argument section of Offerman's brief, however, does not contain any argument relating to comments made by Judge Alm during his prior employment. We therefore may disregard Offerman's argument on this point as waived. See Hawai`i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (2008) ("Points not argued may be deemed waived.") In any event, as discussed infra, we reject Offerman's contention.
[13] Title 28 U.S.C. § 455(a), which is entitled "Disqualification of justice, judge, or magistrate judge," states as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
28 U.S.C. § 455(a) is similar to Canon 3(E)(1) of the Haman Revised Code of Judicial Conduct, which provides, in pertinent part, that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . ."